IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

ANTHONY RENARD PRUITT                                                                PETITIONER
Reg. #12045-002

V.                              NO.  2:10cv00052 JLH-JWC

T.C. OUTLAW, Warden,                                                                 RESPONDENT
FCI, Forrest City, AR

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge J. Leon Holmes.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days after being served with the findings and recommendations. The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the requested hearing before the District Judge was not offered at a hearing before the Magistrate Judge.

3. An offer of proof stating the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## **RECOMMENDED DISPOSITION**

Anthony Pruitt, an inmate in the Federal Correctional Institution in Forrest City, Arkansas, brings this 28 U.S.C. § 2241 petition for writ of habeas corpus, along with a supporting brief (docs. 2, 3), challenging the decisions of the Bureau of Prisons (BOP) to deny him a one-year sentence reduction and to deny him one year of placement in a halfway house. Respondent filed a response (doc. 9), to which Petitioner replied (doc. 14). For the reasons that follow, the petition should be **denied**.

I.
Background

According to Petitioner, he is serving a fifty-one-month prison sentence for convictions under 18 U.S.C. § 922(g)(1) (possession of a firearm by a felon) and § 922(g)(9) (possession of a firearm by a person convicted of domestic violence). He says

he entered the BOP's Residential Drug Abuse Program (RDAP) in June 2009, successfully completing the 500-hour program on March 16, 2010 (doc. 3, at 1, 51).

Petitioner raises three claims:

(1) In violation of the Equal Protection Clause of the United States Constitution, the BOP has denied him a one-year sentence reduction based on successful completion of the RDAP, when inmates in other parts of the United States have been granted the reduction;

(2) Firearm possession under 18 U.S.C. § 922(g) does not constitute a "crime of violence" and therefore cannot be used as a basis for denying the one-year sentence reduction; and

(3) The BOP is violating the applicable statute and policy by refusing to allow him one year of halfway house placement.

## II.
## Discussion

A.  RDAP Sentence Reduction.

Under 18 U.S.C. § 3621(e)(2)(B), the "period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." Petitioner challenges 20 C.F.R. § 550.58, a BOP regulation that categorically excludes from § 3621(e)(2)(B) eligibility inmates convicted of felony firearm possession. Relying on *Arrington v. Daniels*, 516 F.3d 1106, 1113 (9th Cir. 2008), he argues that the BOP promulgated this regulation in violation of the Administrative Procedures Act (APA) by failing to articulate a valid rationale for its categorical exclusion of such inmates (doc. 3, at 2-16; doc. 14, at 1-16). He further argues that the BOP violates the Equal Protection Clause by allowing the one-year reduction to

inmates housed in the Ninth Circuit based on *Arrington*, but denying it to inmates housed elsewhere (doc. 3, at 16-17; doc. 14, at 16-17).

The Eighth Circuit has expressly held that § 550.58 was validly promulgated under the APA, rejecting a federal prisoner's argument based on *Arrington*. *Gatewood v. Outlaw*, 560 F.3d 843, 846-49 (8th Cir.), *cert. denied*, 130 S. Ct. 490 (2009). Moreover, the BOP recently promulgated 28 C.F.R. § 550.55, effective March 16, 2009, which reaffirms the challenged policy and addresses the alleged APA shortcomings cited by Petitioner in his briefs. Petitioner entered the RDAP in June 2009, after the new rule went into effect. Therefore, even if *Gatewood* were not controlling, Petitioner has identified no defect in § 550.55, which also prohibits him from receiving a sentence reduction. *See Stevenson v. FCI Waseca*, No. 09-3918, 2010 WL 2680329, at *1 (8th Cir. July 8, 2010) (§ 550.55 applied to federal prisoner who started drug treatment program after its promulgation, precluding challenge to previous rule).

Furthermore, the courts have uniformly held that the fact that some inmates have obtained relief on this issue in the Ninth Circuit does not give rise to an equal protection violation. *Handley v. Chapman*, 587 F.3d 273, 280-81 (5th Cir. 2009), *cert. denied*, No. 09-9749, 2010 WL 1047660 (U.S. Oct. 4, 2010); *Baldwin v. Federal Bureau of Prisons*, No. CIV-A-10-0530, 2010 WL 3522078, at *10-*11 (D.N.J. Sept. 1, 2010) (equal protection argument is "patently meritless"); *Bland v. Ziegler*, No. 2:09-cv-7, 2010 WL 703116, at *6-*7 (N.D. W.Va., Feb. 25, 2010) ("any 'unequal treatment' is simply a matter of location," rather than the result of intentional or purposeful discrimination); *Stevenson v. FCI Waseca*, No. 09-1755, 2009 WL 3304837, at *3 n.3 (D. Minn. Oct. 13, 2009) (equal protection argument has been "consistently rejected by the federal courts," citing cases), *aff'd*, No. 09-3918,

2010 WL 2680329 (8th Cir. July 8, 2010); *Sweesy v. Federal Bureau of Prisons*, Civil No. 08-985, 2009 WL 1244094, at *2 (D. Minn. May 4, 2009) ("Although Petitioner would certainly prefer the result had he been able to properly bring his case in the Ninth Circuit, the fact that the Court of Appeals for the Eighth Circuit reaches a different result does not raise any constitutional concerns.").

Petitioner's first claim does not entitle him to relief.

B.  <u>Firearm Possession</u>.

Next, Petitioner argues that firearm possession is a nonviolent offense and thus should not preclude him from eligibility under § 3621(e)(2)(B) (doc. 3, at 18-21; doc. 14, at 1-2). He relies on *Stinson v. United States*, 508 U.S. 36 (1993), which held that, in determining whether a § 922(g) offense constitutes a predicate "crime of violence" for purposes of imposing the United States Sentencing Guidelines' career offender provisions, the term "crime of violence" does not include "the offense of unlawful possession of a firearm by a felon." *Id.* at 47.

The wording of § 3621(e)(2)(B) makes any sentence reduction discretionary with the BOP but does not define "nonviolent offense." Where Congress has enacted a law that does not answer the precise question at issue, "all [the Court] must decide is whether the [BOP], the agency empowered to administer the early release program, has filled the statutory gap 'in a way that is reasonable in light of the legislature's revealed design.'" *Lopez v. Davis*, 531 U.S. 230, 242 (2001). The Supreme Court has upheld as reasonable the BOP's decision to categorically preclude inmates who possessed firearms from the § 3621(e)(2)(B) sentence reduction benefit. *Id.* at 239-42. The Supreme Court agreed with

the BOP that denying early release to those inmates "rationally reflects the view that such inmates displayed a readiness to endanger another's life." *Id.* at 240.

Nothing in *Stinson* requires the BOP to define a § 922(g) violation, for purposes of applying § 3621(e)(2)(B) and its regulations, in the same manner as the United States Sentencing Commission defines it. *Parsons v. Pitzer*, 149 F.3d 734, 736 (7th Cir. 1998); *see also Venegas v. Henman*, 126 F.3d 760, 764-65 (5th Cir. 1997) (contrasting purposes served by the sentencing guidelines with those underlying early release decisions); *Ellis v. Terrell*, 455 F. Supp. 2d 1230, 1234-35 (D. Kan. 2006) ("[R]eliance on the definition of crimes of violence under the Sentencing Guidelines ignores the differing rationale behind § 3621."). As explained by the Eighth Circuit, although the offenses of inmates convicted of firearm possession "may be 'nonviolent' within the meaning of the statute, their underlying conduct indicates that [these inmates] pose a serious risk to public safety" and "the BOP's decision to exclude these additional categories of inmates from eligibility represents a manifestly permissible construction of the statute and an appropriate exercise of the BOP's discretion." *Bellis v. Davis*, 186 F.3d 1092, 1095 (8th Cir. 1999).

Petitioner's second claim does not entitle him to relief.

C.       Halfway House Placement.

Petitioner's last argument is based on the Second Chance Act of 2007, which provides that the BOP shall "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c)(1); Pub. L. No. 110-199, § 251, 122 Stat. 657, 692-93 (2008). Petitioner contends that BOP policy is that, upon successful

completion of the RDAP, an inmate will be "put in for at or near maximum halfway house placement," *i.e.*, twelve months. He also refers to two memoranda setting forth guidance for BOP officials, emphasizing that inmates should be considered for the full twelve-month period (doc. 3, at 21-33; doc. 14, at 17-19). He says he should be given extended halfway house placement based on his conduct and achievements during his term of imprisonment (doc. 3, at 33, 49-61).

Respondent asserts that this claim has not been exhausted.[1] The federal writ of habeas corpus is "an extraordinary remedy" limited to "cases of special urgency." *Willis v. Ciccone*, 506 F.2d 1011, 1014 (8th Cir. 1974). In the context of challenges to the actions of prison authorities, this means that habeas relief can be available only after "administrative procedures which provide a real possibility for relief have been exhausted." *Id.* at 1014-15. Therefore, federal prisoners challenging the actions of the BOP are required to exhaust the BOP's administrative remedies before seeking judicial review through a § 2241 habeas petition. *Id.*; *see also United States v. Chappel*, 208 F.3d 1069, 1069-70 (8th Cir. 2000). This includes a prisoner's challenge to BOP regulations and policies regarding community confinement. *Garza v. Davis*, 596 F.3d 1198, 1203-05 (10th Cir. 2010). The applicable regulations set forth a tiered administrative remedy process by which a federal prisoner may seek "review of an issue which relates to any aspect of his/her own confinement." 28 C.F.R. §§ 542.10(a), 542.13-542.15.

Respondent submits the declaration from a BOP official, along with supporting documentation, showing that Petitioner has never filed any administrative remedies dealing

---

[1] Respondent concedes that the RDAP sentence-reduction issue is exhausted.

with his halfway house placement issue (doc. 9-1, at 3, 5 & 6). As Petitioner does not address the exhaustion argument, he has not demonstrated that exhaustion would be futile or should be otherwise excused. Consequently, utilization of the administrative remedy process is a prerequisite to seeking habeas relief on the halfway house issue.

Moreover, even if he were to satisfy the exhaustion requirement, Petitioner has not demonstrated error on the part of the BOP. The BOP is authorized by statute to "designate the place of [a federal] prisoner's imprisonment," which may be "any available penal or correctional facility that meets minimum standards of health and habitability established by the [BOP] ... that the [BOP] determines to be appropriate and suitable." 18 U.S.C. § 3621(b). The statute further provides that the BOP may "at any time" direct the transfer of a prisoner from one penal or correctional facility to another. *Id.* In the course of exercising its discretion regarding a prisoner's housing designation or transfer, the BOP is to consider: (1) the resources of the available facilities; (2) the nature and circumstances of the prisoner's offense; (3) the history and characteristics of the prisoner; (4) statements and recommendations from the sentencing court; and (5) policy statements issued by the United States Sentencing Commission. *Id.* § 3621(b)(1)-(5).

As stated, the BOP is also required by statute to ensure, "to the extent practicable," that a prisoner spends "a portion" of the final months of his prison term under conditions that afford him a "reasonable opportunity" to prepare for reentry into the community. *Id.* § 3624(c)(1). These conditions "may include" a community correctional facility, which includes residential re-entry centers (RRCs) and halfway houses. *Id.*; 28 C.F.R. § 570.20(a). Placement must be considered in light of the factors set forth in § 3621(b), must be determined "on an individual basis," and must be of "sufficient duration to provide the

greatest likelihood of reintegration into the community." 18 U.S.C. § 3624(c)(6). The listing of factors in § 3621(b) does not, however, preclude the BOP from considering other matters in its placement analysis. *Miller v. Whitehead*, 527 F.3d 752, 757-58 (8th Cir. 2008) (BOP permitted to consider circumstances such as time remaining on a sentence, inmate's behavior in prison, and capacity of facility to accept inmates into a particular program).

The Second Chance Act of 2007 extended the maximum transition period under § 3624(c)(1) from 180 days to twelve months. *Id.* § 3624(c)(1); *see Miller*, 527 F.3d at 756. The implementing regulations, promulgated October 21, 2008, state that inmates may be designated to community confinement "as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months." 28 C.F.R. § 570.21(a). The regulations also direct the BOP to designate inmates for such confinement in a manner consistent with § 3621(b), to make the determinations on an individual basis, and to designate a period "of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part." *Id.* § 570.22.

Read together, § 3621(b) and § 3624(c) vest the BOP with broad discretion in considering community confinement, and nothing in the statutes, or any applicable case law, mandates that the BOP designate any inmate for community correction placement at any time, much less for the maximum twelve-month period provided by the Second Chance Act. The Eighth Circuit has "emphasize[d] ... that 18 U.S.C. § 3624(c) does not require placement" in community confinement; rather, "[i]t only obligates the BOP to facilitate the prisoner's transition from the prison system." *Elwood v. Jeter*, 386 F.3d 842, 847 (8th Cir.2004). The BOP's obligation is qualified by phrases such as "to the extent practicable,"

"reasonable opportunity," and "sufficient duration," and nothing dictates how long the transition period must be or where it will be served. These are matters left to the discretion of the BOP, so long as it is an individualized decision considering the statutory criteria. *See Miller*, 527 F.3d at 758.

The record shows that BOP staff recommended Petitioner for 180 days of RRC placement, after completing a Second Chance Act/RRC Needs Assessment on September 29, 2009 (doc. 9-1, at 4). The form shows that a number of factors were specifically considered, including: (1) the nature and circumstances of Petitioner's offense (threatening to kill his wife, possessing a stolen firearm); (2) his prior criminal history (assault, probation violation by firing a gun, domestic violence, possession of marijuana); (3) his history and characteristics (history of violence); (4) his institutional adjustment/conduct (good, no institutional violations); (5) his community/family support (good), (6) proposed employment and residence (established); (7) job skills/education (completed GED/high school diploma); (8) RDAP participation; (9) resources of the contemplated facility (transitional, educational and employment resources available); and (10) relevant statements by the sentencing court or the Sentencing Commission (none). The basis for Petitioner's 180-day recommendation was stated as follows: "Criminal history of violence, short length of sentence (feds), residence and employment established."

This record is sufficient to demonstrate that the BOP based Petitioner's placement recommendation on legitimate factors individual to his situation, considering factors weighing both for and against extended community confinement.

Petitioner asserts that the BOP has adopted a policy stating that any inmate who successfully completes the drug program "would be put in for at or near maximum halfway

house placement," which means twelve months under the Second Chance Act. However, he neither cites nor submits a regulation, rule, memoranda, or other written policy mandating twelve months of placement for successful RDAP completion. The needs assessment form clearly states that his RDAP participation was considered, yet apparently was outweighed by the other factors against extended community confinement.

In support of this claim, Petitioner also cites *Fults v. Sanders*, 442 F.3d 1088 (8th Cir. 2006). *Fults* held that a 2005 BOP regulation conflicted with § 3621(b) by "excluding an entire class of inmates – those not serving the final ten percent of their sentences – from the opportunity to be transferred" to community confinement. *Id.* at 1092. In response to *Fults*, the BOP instructed officials to act in accordance with Program Statement (PS) 7310.04, providing that RRC placement for longer than 180 days was allowed, but only with "extraordinary justification." *Miller*, 527 F.3d at 754. In *Miller*, the Eighth Circuit rejected a challenge to PS 7310.04, distinguishing *Fults* because the "extraordinary justification" standard did not categorically preclude the exercise of discretion as to an entire class of inmates; rather an inmate could still show that a longer placement was justified based on individual circumstances. *Id.* at 757. Nothing indicates that the BOP used the invalidated 2005 regulation in making Petitioner's RRC recommendation in September 2009, and it is clear that the recommendation was based on factors individual to his situation, rather than a categorical exclusion.

Under these circumstances, Petitioner has not demonstrated a basis for setting aside the BOP's determination regarding his community confinement placement. His third claim does not entitle him to relief.

III.
Conclusion

Accordingly, this 28 U.S.C. § 2241 petition for writ of habeas corpus (doc. 2) should be **denied, dismissing this action in its entirety with prejudice.**

DATED this 12th day of October, 2010.

_____
UNITED STATES MAGISTRATE JUDGE